## BELSCHNER *v.* ANCHOR POST PRODUCTS, INC., ET AL.

[No. 58, September Term, 1961.]

██

*Decided November 22, 1961.*

The cause was argued before HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Marvin B. Steinberg,* with whom was *Marvin J. Land* on the brief, for the appellant.

*William L. Marbury,* with whom were *Jesse Slingluff* and *Piper & Marbury* on the brief, for the appellees.

HORNEY, J., delivered the opinion of the Court.

The question presented in this case is whether an employee, who has continued to perform his work in a satisfactory manner without loss of wages in the same occupation he had been engaged in for years, is entitled to workmen's compensation for the loss of hearing he sustained as a result of exposure to high level industrial noises.

Charles W. Belschner (the employee and claimant) had worked for the Anchor Post Products Company (the employer) for more than twenty years. For twelve years he had been employed as a saw operator, and, during this time, the noises his ears were subjected to were such as to cause impairment of his hearing. In March of 1958 the employee filed

a claim for partial disability caused by a spark accidentally flying into one of his ears, but in January of 1959 he amended the claim by asserting that the disability he had sustained was the result of an occupational disease described as "deafness due to working in an environment of loud noises over a period of time." The claim having come on for a hearing before the medical board, the parties stipulated that the claimant had suffered a forty-four per centum binaural loss of hearing due to industrial exposure. There was testimony by the foreman, under whom he worked, that the claimant was still performing his duties as a saw operator in a satisfactory manner. There was also a colloquy between counsel for the claimant and the medical board as to whether the impairment of hearing had affected the capacity of the claimant to work, but when a member of the board interposed an observation that the claimant was doing his work "just as well" and "producing the same thing" as he did before the impairment and was "making the same living," the discussion seems to have ended. In any event, the claimant was not called to testify and no testimony was offered in his behalf. At the conclusion of the hearing, the board, basing its finding and decision on the stipulations and the medical reports, was of the opinion that the claimant had suffered a "binaural hearing loss due to industrial exposure" to the extent stipulated by the employer and employee.

But, when the insurer of the employer requested a review of the decision of the medical board, the Workmen's Compensation Commission reversed the decision of the board and found that "the claimant did not sustain an occupational disease" within the meaning of the statute, and further found that the "claimant did not sustain an accidental injury arising out of and in the course of employment," and entered an order disallowing the claim for compensation. And, upon the appeal of the claimant to the Superior Court of Baltimore City, that court affirmed the decision of the Commission, and this appeal followed.

Since the provisions of § 36 of Article 101 of the Code of 1957 are as applicable in a proper case to a disability resulting from an occupational disease as they are to a disability arising out of an accidental injury, it is the contention of the

claimant that he is entitled to compensation for the loss of hearing it is not disputed he sustained.

As originally enacted in 1914, the Workmen's Compensation Law (now codified as Article 101 in the Code of 1957) provided that every employer should pay (or provide) compensation for the disability or death of an employee from an accidental injury arising out of and in the course of his employment. But, until the enactment of an amendment in 1939, there was no provision in the law to compensate an employee who had suffered injury from an occupational disease. And, though the original statute did not define the term "disability," it was then provided, as it is now, that an employee is entitled to compensation (and the amount thereof is fixed) for a disability partial in character but permanent in quality in accordance with a schedule of specific injuries, including one "for the total loss of hearing of both ears." See § 36(3) of Art. 101 of the Code of 1957. Furthermore, we have ruled from time to time that a claimant need not show loss of wages or earning capacity in order to be entitled to compensation for an accidental injury. See *Balto. Publishing Co. v. Hendricks*, 156 Md. 74, 143 Atl. 654 (1928); *Balto. Tube Co. v. Dove*, 164 Md. 87, 164 Atl. 161 (1933).[1]

Such was the state of the law before the enactment of Chapter 465 of the Acts of 1939, to provide compensation to employees suffering from occupational diseases. Besides providing coverage for an injury which theretofore had not been compensable, this amendment to the workmen's compensation

---

1. For other cases involving accidental injury which arose after occupational diseases had been made compensable, see *Beth.-Spar. Pt. Shipyard v. Glass*, 188 Md. 501, 53 A. 2d 405 (1947), in which it is stated that while the right to file a claim for compensation does not depend upon whether the claimant had lost wages as a result of an accidental injury, the Commission may find impairment of earning capacity based on a loss of function which may be a deterrent to or denial of future promotion or denial of future employment. And cf. *Bethlehem Steel Co. v. Wilson*, 210 Md. 568, 124 A. 2d 249 (1956), concerning an allowance in the discretion of the Commission for mutilations and disfigurements arising out of an accidental injury not otherwise provided for in § 36 (3) of Art. 101.

law (which has since been further amended) undertook to define the terms "disablement" and "disability" and, in so doing, limited their application for the obvious purpose of pointing out that the word "disability" means one thing when used in providing compensation for injury caused by an occupational disease but means something different when used in providing compensation for accidental injury.

As the law now stands, § 22 (a) of Art. 101 provides compensation "[w]here an employee * * * suffers from an *occupational disease,* and is thereby *disabled* from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, * * * [provided] the disease was due to the nature of the occupation or process in which he was employed within the period previous to his *disablement.*" [Emphasis added.] Section 67 (13) defines "occupational disease" as "the event of an employee's becoming actually incapacitated, either temporarily, partially or totally, because of a disease contracted as the result of and in the course of employment." And, in the definitions included in § 67 (15), the word "disablement," as used in certain stated sections of the statute (relating only to injury resulting from occupational disease), means "the event of an employee's becoming actually incapacitated, either partly or totally, because of an occupational disease, from performing his work in the last occupation in which exposed to the hazards of such disease"; and the word "disability" is declared to mean "the state of being so incapacitated." While the words "actually incapacitated" are not defined in the statute, obviously because they are neither ambiguous nor equivocal and import no technical industrial meaning, it has been said that an employee is not incapacitated within the intent of the law "if, though injured, [he] still has the capacity, the ability to, and does continue to perform his regular work, for which he was employed, and receives his usual pay for the work." *Lumbermen's Reciprocal Ass'n v. Coody,* 278 S. W. 856 (Tex. Civ. App. 1926).

It is true, of course, that § 36(3)(a) and (b), besides fixing the weekly rate of compensation for permanent partial disability within a specified maximum and minimum, sets up a schedule for determining compensation for certain specified

injuries, including an injury for loss of hearing of both ears, but it does not regulate the liability of an employer for such injuries, and, which is more significant, there is nothing therein eliminating the necessity of first meeting the requirements of § 22 (a). It is also a fact that § 22 (a) provides in part that an employee "shall be entitled to compensation in the amount and payable in the manner provided * * * [in § 36 (3)], as if such disablement * * * [resulting from an occupational disease] were an injury by accident," but it should not be overlooked that this part of this one sentence section must be read with the introductory part of the section which limits entitlement to compensation for an occupational disease to a situation in which the employee "is thereby disabled from performing his work."

The claimant argues, nevertheless, that inasmuch as an employee, who has suffered one of the scheduled injuries enumerated in § 36, is not compelled to show loss of wages or earning capacity, he was not required to prove actual incapacitation in order to be entitled to compensation for the injury he had sustained as a result of an occupational disease. But the claimant in so arguing either failed to recognize or chose to ignore the basic distinction hereinbefore alluded to between the meaning of the term "disability" in accidental injury cases (where it is not even defined) and occupational disease cases (where it is specifically defined as the state of being actually incapacitated). In a recent New York case *(Muniak v. ACF Industries, Inc.,* 7 App. Div. 2d 258, 182 N. Y. S. 2d 539), where it was stated that for industrial purposes a "disability" in the case of an occupational disease is deemed "to exist when there is some resulting adverse change in wage earning," it was aptly pointed out that the reason for this policy is that an "accident" is an occurrence usually having some outward manifestation of cause and effect, but a "disease" may exist and continue for a long period without outward manifestation until it is revealed in one way or another by the person affected.

Without saying more, we think that the decision in *Beth. Steel Co. v. Carter,* 224 Md. 19, 165 A. 2d 902 (1960), is controlling here. As we see it, there is no real distinction between

that case and this. In the *Carter* case, where the claimant had been transferred from one type of work to another (not because his silicotic condition had physically disabled him from performing the work he had previously done but as a preventive measure), the claim for permanent total disability was disallowed and compensation was awarded for partial disability, under § 24 (b) of Art. 101 relating specifically to pulmonary dust diseases such as silicosis, because it was found that the capacity of the claimant to work had been impaired to an extent not amounting to total permanent disability, and this Court affirmed that finding. In the present case, where the claimant, despite the undisputed impairment of his ability to hear, had continued to perform his work in a satisfactory manner without loss of wages, the claim for permanent partial disability was disallowed because the claimant had not shown that he was incapacitated at all by the impairment of his hearing, and we shall affirm this finding. Both cases necessarily involved an interpretation of the terms "disablement" or "disability." In the *Carter* case we ruled that the claimant was not *totally disabled* within the meaning of § 67 (15), and in the instant case we hold that the claimant is not *partially disabled* at the present time within the meaning of the same section.

Having reached this decision by an interpretation of the Maryland statute, there is no reason for us to attempt to analyze or discuss the decisions of the appellate courts in other jurisdictions regardless of whether or not they have reached the conclusion we reach in this case on the question presented. Cf. *Victory Sparkler Co. v. Francks,* 147 Md. 368, 128 Atl. 635 (1925). If there is a need to liberalize the law or to change what we think it plainly means, that is a legislative, not a judicial, function.

For the reasons hereinbefore stated the order of court affirming the decision of the Commission will be affirmed.

*Order affirmed; appellant to pay the costs.*

HAMMOND, J., concurs in the result.