519 A.2d 1348

**Douglas J. CRAWLEY, Sr.**

v.

**GENERAL MOTORS CORPORATION.**

No. 752, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Jan. 20, 1987.

Joseph R. Zauner, III (Rochlin and Settleman, P.A., on the brief), Baltimore, for appellant.

Steven Scott Stephens (Joseph B. Harlan and Birrane, Harlan & Sharretts, on the brief), Baltimore, for appellee.

Argued before GARRITY, BLOOM and KARWACKI, JJ.

BLOOM, Judge.

■ The sole question posed by this appeal is whether an employee who suffers from a condition of impaired hearing resulting from protracted exposure to noise in the course of his occupation, but who has not yet experienced any "disablement," *i.e.*, loss of wages or capacity to perform his regular work, is entitled to receive worker's compensation. We hold that he is.

### Factual Background

This matter comes to us on an expedited appeal from the judgment of the Circuit Court for Baltimore City, which reversed an order of award by the Workmen's Compensation Commission (Commission). The Commission had determined that appellant, Douglas J. Crawley, Sr., had sustained a compensable degree of occupational deafness as a result of his employment with appellee, General Motors Corporation.

It is stipulated by the parties that at all relevant times appellant was an employee of General Motors Corporation, GM Assembly Division, and had been for over twenty years. During the course of his employment, he was exposed to industrial noise. On or about November 27, 1984, appellant filed a claim with the Commission seeking benefits for a hearing loss allegedly sustained as a result of that exposure. An examination and evaluation performed by Dr. Norman Blankman and submitted to the trial judge found that appellant had a permanent binaural hearing impairment of 3% when measured pursuant to the guidelines of Maryland Annotated Code (1985 Repl.Vol.) art. 101, sec. 25A. It was further stipulated that appellant had not yet suffered any "disablement" as that term is defined in art. 101, sec. 67(15).[1]

In reversing the Commission, the trial judge determined that "disablement" was a necessary threshold element of a compensable claim for occupational deafness, just as it is a requirement for the compensability of claims for any other occupational disease.

### Discussion of Law

Appellee's contention, with which the trial court agreed, is that *Belschner v. Anchor Post Products, Inc.*, 227 Md. 89, 175 A.2d 419 (1961), is dispositive of the issue. As in the case at bar, the question presented in *Belschner* was whether an employee, who continued to perform in the same occupation in a satisfactory manner without loss of wages, was entitled to worker's compensation for the hearing impairment he had sustained as a result of exposure to industrial noise. Mr. Belschner, who had been employed as a saw operator for 12 years, suffered a 44% binaural loss of

---

1. Section 67(15) of art. 101 defines "disablement" as "the event of an employee's becoming actually incapacitated, either partly or totally, because of an occupational disease, from performing his work in the last occupation in which exposed to the hazards of such disease."

hearing due to industrial noise exposure.[2]  The evidence established, however, that the claimant was still performing his duties as a saw operator in a satisfactory manner and without any loss of wages.  The Court held that compensation for deafness resulting from an occupational disease (long exposure to industrial noise), as distinguished from accidental injury, was limited by the language in sec. 22(a) of art. 101, to a person *"disabled"* from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease.  The Court alluded to the statutory definition of "disablement" (see footnote 1) and observed that:

> While the words "actually incapacitated" are not defined in the statute, obviously because they are neither ambiguous nor equivocal and import no technical industrial meaning, it has been said that an employee is not incapacitated within the intent of the law "if, though injured, [he] still has the capacity, the ability to, and does continue to perform his regular work, for which he was employed, and receives his usual pay for the work." *Lumbermen's Reciprocal Ass'n v. Coody,* 278 S.W. 856 (Tex.Civ.App. 1926).

*Id.* at 93, 175 A.2d 419.

The Court in *Belschner* further noted that while the statute provided a rate of compensation for loss of hearing, "[t]here is nothing therein eliminating the necessity of first meeting the requirements of § 22(a)." *Id.* at 94, 175 A.2d 419.  In conclusion, the Court commented, "If there is a need to liberalize the law or to change what we think it plainly means, that is a legislative, not a judicial, function." *Id.* at 95, 175 A.2d 419.

In 1967, the Legislature enacted section 25A of article 101, entitled "Occupational deafness."  It provides, in pertinent part:

---

**2.** The standard of measurement as to binaural loss in *Belschner* appears to have been different from that employed in the case *sub judice.*

(a) Occupational deafness shall be compensated according to the terms and conditions of this section.

(b) For compensation purposes losses of hearing due to industrial noise shall be confined to the frequencies of 500, 1000, and 2000 cycles per second. Loss of hearing ability for frequency tones above 2000 cycles per second are not to be considered as constituting disability for hearing.

(c) The percent of hearing loss, for purposes of the determination of compensation claims for occupational deafness, shall be calculated as the average, in decibels, of the thresholds of hearing for the frequencies of 500, 1000, and 2000 cycles per second. Pure tone air conduction audiometric instruments, approved by nationally recognized authorities in this field, shall be used for measuring hearing loss. If the losses of hearing average 15 decibels or less in the three frequencies, such losses of hearing shall not then constitute any compensable hearing disability. If the losses of hearing average 82 decibels or more in the three frequencies, then the same shall constitute and be a total or 100 percent compensable hearing loss.

(d) In measuring hearing impairment, the lowest measured losses in each of the three frequencies shall be added together and divided by three to determine the average decibel loss. For every decibel of loss exceeding 15 decibels an allowance of one and one half (1½) percent shall be made up to the maximum of one hundred (100) percent which is reached at 82 decibels.

(e) In determining the binaural percentage of loss, the percentage of impairment in the better ear shall be multiplied by five (5). The resulting figure shall be added to the percentage of impairment in the poorer ear and the sum of the two divided by six (6). The final percentage shall represent the binaural hearing impairment.

(f) Before determining the percentage of hearing impairment, in order to allow for the average amount of hearing loss from non-occupational causes found in the population at any given age, there shall be deducted from the total

average decibel loss, one half (½) decibel for each year of the employee's age over forty at the time of last exposure to industrial noise.

.    .    .    .    .

(The remaining three subsections of § 25A address the extent of an employer's liability for occupational deafness, evaluation without hearing aids, and minimum time period of noise exposure.)

Appellant's position is that in enacting section 25A the Legislature was responding to the *Belschner* Court's invitation to change the law. Appellee, on the other hand, contends that by placing section 25A in the midst of those sections of article 101 dealing with occupational diseases,[3] the Legislature intended the disability or disablement requirement for compensation for all occupational diseases as set forth in section 22(a) to apply to section 25A. It views section 25A as merely establishing highly technical criteria for measuring occupational deafness. The trial court agreed with appellee's contention; we, however, believe that appellant's interpretation of the legislative intent is the correct one.

█ It is the duty of this Court to declare law as the General Assembly has made it so as to give effect to the true legislative intent behind the statute. *State v. Berry*, 287 Md. 491, 495–96, 413 A.2d 557 (1980). The search for legislative intent begins with an examination of the statute itself and if the language is of clear import, the inquiry ends. *Bledsoe v. Bledsoe*, 294 Md. 183, 189, 448 A.2d 353 (1982). If, however, the language of the statute is ambiguous or of doubtful import, this Court may properly examine the history of the passage of the act and reports of commis-

---

**3.** Sections 22 through 30. Sections 24 and 25, dealing with pulmonary dust diseases (silicosis and asbestosis) and §§ 28 and 29, dealing with autopsies, investigation of occupational disease claims by the Medical Board and review of Medical Board proceedings by the Commission, have since been repealed.

sions and committees concerning the legislation. *Cf. Bledsoe v. Bledsoe, supra; State v. Berry, supra.*

The language of section 25A does not specifically state whether the General Assembly intended to eliminate disablement as a precondition of recovery for occupational deafness. Nevertheless, section 25A(a) reads: "Occupational deafness shall be compensated according to the terms and conditions of *this* section." (Emphasis supplied.) Consequently, the absence of any reference within section 25A to disablement or disability as a term or condition of compensation for occupational loss of hearing has some significance. It is not, however, dispositive of the issue. Since the Legislature chose to designate its act dealing with occupational deafness as § 25A, thus placing it among those sections dealing with occupational disease, it is conceivable that further reference to disablement was not deemed necessary.

Because the language of section 25A does not clearly reveal the legislative intent concerning disablement, we must examine the legislative history of that section. *Bledsoe v. Bledsoe, supra.* During the legislative process, what is now section 25A originated as House Bill 473. *See* Act of Apr. 14, 1967, ch. 155, 1967 Md.Laws 273. House Bill 473 was one of eight bills [4] introduced on February 17, 1967, by Delegate Sol J. Friedman to effectuate changes to article 101 suggested three days earlier in the Seventh Report of the Governor's Commission to Study Maryland's Workmen's Compensation Laws. It was the recommendation of the Commission, of which Delegate Friedman was a member, that occupational loss of hearing be made compensable irrespective of disablement.[5] We believe House Bill 473

---

4. H.B. 467 through H.B. 474.

5. The report stated:
   (4) On the recommendation of the representatives of the various insurance carrier associations and the self-insurer's association, the Study Commission is recommending that the Occupational Disease Section of the compensation law be amended to provide for occupa-

was sufficient to accomplish just that. It specifically provided that an occupational loss of hearing (measured in decibels with each decibel of loss in excess of 15 equal to 1½% disability) shall be compensable-*any* loss of hearing in excess of 15 decibels, as measured in accordance with section 25A, without regard to disablement. We find the penultimate sentence of subsection (c) to be particularly significant. By providing that a hearing loss of 15 decibels or less shall *not* constitute a *compensable disability*, the language employed by the Legislature implies that a hearing loss in excess of 15 decibels was intended to be a compensable disability. Under section 22(a), *disability* for other types of occupational diseases means inability to perform the work of the last occupation in which the worker was injuriously exposed to the hazards of the disease; under section 25A, *disability* for occupational deafness is loss of hearing in excess of 15 decibels within specific frequency tones.

■ Based on the available legislative history, we believe that the Legislature intended, in enacting section 25A, not only to provide technical criteria for measuring occupational loss of hearing but also to make such loss compensable without regard to inability to work or loss of wages. The Commission so interpreted section 25A in this case, and that interpretation appears to be consistent with at least one prior ruling. In *Armco Steel Corp. v. Trafton*, 35 Md.App. 658, 371 A.2d 1128 (1977), the Commission awarded compensation to a tow motor operator who sustained a 45% binaural loss of hearing, as measured in accordance with section 25A, as a result of long exposure to industrial noise. In affirming that award, we made no reference to section 22(a) (requiring disablement as a condition of compensation) or to section 67(15) (defining disablement). Indeed, the sole evi-

---

tional loss of hearing. At the present time, an employee cannot recover for occupational loss of hearing until he shows a loss of wages, due to court interpretation of the laws; and, in many cases, the time elapsed invokes limitations and the employee receives no compensation.

dence relating to "disability" in that case was the medical report that measured the loss at 45% binaural, "partially compensated for by means of a hearing aid. With such a loss Mr. Trafton should be able to operate mobile equipment."

We hold, therefore, that the Commission properly awarded compensation to appellant, and that the circuit court erred in reversing that award.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE.

GARRITY, Judge, dissenting.

I respectfully dissent. I believe the trial judge correctly determined that "disablement" is a necessary threshold element of a compensable claim for occupational deafness, just as it is a requirement for the compensability of claims for any other type of occupational ailment. Furthermore, as did the trial court, I believe the holding in *Belschner v. Anchor Post Products, Inc.*, 227 Md. 89, 175 A.2d 419 (1961), to be dispositive of the issue.

In *Belschner*, evidence established that although the claimant had suffered a 44% binaural loss of hearing due to noise exposure over a period of 12 years while operating a saw, he continued to perform his work in a satisfactory manner and without any loss of wages. The Court held that compensation for occupational deafness was limited by the language in § 22(a) of art. 101, to a person *"disabled"* from performing his work. Under the statute in question, "disablement" is defined as

the event of an employee's becoming actually incapacitated, either partly or totally, because of an occupational disease, from performing his work in the last occupation in which exposed to the hazards of such disease.

While the Court observed that there was nothing in the statute as to occupational deafness which eliminated the necessity of first meeting the requirement of § 22(a) of being "actually incapacitated," it invited the Legislature to

amend the statute "if there is a need to liberalize the law or to change what we think it plainly means ..." *Id.* at 95. Contrary to the majority's interpretation of § 25A that the Legislature "specifically provided" that compensable occupational deafness would be *"any* loss of hearing in excess of 15 decibels ... without regard to disablement," I believe that such interpretation is unduly strained.

In pursuing our goal to discern and effectuate the actual purpose of the legislation, we must rely primarily upon the language chosen by the General Assembly to express its intention and should, in construing the statute, seek to avoid results that are unreasonable or inconsistent with common sense. *Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979). In construing the act, its purpose must be borne in mind, and such construction be given as will effectuate the intent and spirit of the act, unless that construction is plainly denied by the language. *State v. Richardson,* 233 Md. 534, 197 A.2d 428 (1964).

Notwithstanding appellant's theory that § 25A stands independently, and is, therefore, not subject to the threshold requirement of disablement, I believe the clear intent of § 25A is to provide both a qualifying standard of compensibility (loss of hearing in excess of 15 decibels) and a technical format by which to measure such hearing loss due to industrial noise. See *Armco Steel Corp. v. Trafton,* 35 Md.App. 658, 668, 371 A.2d 1128 (1977), where we affirmed a disability rating formulae prescribed by § 25A.[1] Indeed, I believe that any other interpretation of § 25A would be unreasonable and contrary to public policy. The very *raison détre* for providing workmen's compensation in the wake of contracting an occupational disease or disorder is to restore to a worker that portion of lost wages due to the physical disability caused by that occupation.

Wage-loss legislation is designed to restore to the worker a portion ... of wages lost due to the three major

---

**1.** Although the majority places reliance on *Armco Steel,* the issue of disability was neither raised nor discussed by the court.

causes of wage-loss: physical disability, economic unemployment, and old age. *The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable.* Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. [4 A. Larson, *The Law of Workmen's Compensation* § 97.10, at 18–19 (1979).] (emphasis added).

Indeed, any other result would operate as an open invitation to thousands of workers in shipyards, machine shops, factories, stadiums, and other noisy employment settings to file claims for impaired deafness while continuing to draw full wages. *See* 1B Larson at § 41.51, 7–426. We need but quickly glance at the resultant legislative flurry which accompanied the ruling in *Slawinski v. J.H. Williams*, 298 N.Y. 546, 81 N.E.2d 93 (1948) to discount such thought.

The New York Court of Appeals in *Slawinski* permitted recovery for occupational deafness without any showing of wage loss. Fearing a similar flood of hearing loss claims throughout the nation, the ruling caused "[t]he greatest flurry in the occupational disease field after the recognition of silicosis as a compensable disease in the early 1930's and before the advent of the asbestos crisis." 1B Larson at 7–423. As pointed out by Professor Larson,

As employers and carriers became more conscious of the impairment-of-hearing problem, they discovered that as many as 25 percent of applicants for industrial jobs of all kinds had some loss of hearing, by no means all employment-connected, of course. *Here again, if a state, like Maryland, had a clear rule that benefits could not be paid on the theory of occupational disease in the absence of actual wage loss, no unusual problem arose.* But in some other states, fears began to be expressed that the flood of claims might be ruinous to insurance

carriers who, as in the case of silicosis, had not collected premiums against this kind of liability.  (emphasis added). *Id.* at 7–426.

As the Legislature provided in § 25A much needed technical parameters in measuring binaural loss of hearing due to industrial noise exposure, but did not eliminate the need on the part of a claimant to first show he or she was "actually incapacitated" by suffering some disablement, I would affirm the judgment in accordance with the holding in *Belschner v. Anchor Post Products, Inc., supra.*