844 A.2d 1151

**Arnold C. YOX**

v.

**TRU–ROL COMPANY, INC., et al.**

No. 31, Sept. Term, 2003.

Court of Appeals of Maryland.

March 15, 2004.

Thomas J. Drechsler (Thomas A. Imperiale of Carson, Jones-Bateman & Drechsler, P.A., on brief), Towson, for petitioner.

Robert Julian Zarbin, James MacAlister, Baltimore, brief of Maryland Trial Lawyers Assoc., for petitioner, amicus curiae.

William S. Tostanoski (Tostanoski & Martin, P.A., on brief), Baltimore, for respondents.

Edward J. Gilliss, County Attorney for Baltimore County, Towson, Thurman W. Zollicoffer, Jr., City Solicitor for Baltimore City, Baltimore, Charles W. Thompson, Jr., County Attorney for Montgomery County, Rockville, David S. Whitacre, County Attorney for Prince George's County, Upper Marlboro, brief of Baltimore City, Baltimore County, Montgomery County, and Prince George's County, for respondents, amici curiae.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, Judge.

Maryland Code, § 9–711 of the Labor and Employment Article (LE) requires that a claim for workers' compensation benefits based on "disablement" resulting from an occupational disease be filed within two years after the date (1) of disablement, or (2) when the employee had actual knowledge that the disablement was caused by the employment. The issue before us is what is meant by "disablement" when the

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

claim is for occupational deafness pursuant to LE §§ 9–505 and 9–649 through 9–652.

We shall hold that an occupational deafness disablement occurs when the hearing loss is sufficient to become compensable under § 9–650. A claim for workers' compensation benefits based on occupational deafness must therefore be filed within two years from the time the hearing loss reaches that level of compensability and the employee has actual knowledge that the loss was caused by his/her employment. As the evidence in this case reveals that, in 1987, petitioner, Arnold Yox, (1) suffered from a hearing loss that was compensable under § 9–650, (2) knew that he suffered a hearing loss, and (3) knew that the hearing loss resulted from his employment, his claim, filed 13 years later, is time-barred under § 9–711.

### BACKGROUND

Petitioner worked for respondent, Tru–Rol Company, Inc., for more than 47 years as a press operator. His duties included running the press, tearing down tractors with an air wrench, and using a jack hammer and a vibrator, which he described as a loud piece of machinery resembling a jackhammer. Throughout his employment, he was exposed to loud noise. At some point, perhaps around 1991, Mr. Yox was given earmuffs to wear. He wore them when working the vibrator but not otherwise.

In September, 1987, Mr. Yox saw Dr. Robert Schwager, an ear, nose, and throat specialist, although there is some discrepancy in their recollections as to why. Dr. Schwager, reading from notes he made at the time, recalled that Yox complained of a hearing loss and throat pain; he made no note of any complaint about a ringing in the ears. Yox said that he consulted Schwager because of a ringing in his ears; he did not recall any throat pain and did not think at the time that he had a hearing loss, as he could hear the television at home. Dr. Schwager performed or had performed an audiometric test, which revealed a 35.25% hearing loss in the right ear and a 37.75% loss in the left ear. That extent of loss, according to

Dr. Schwager, would have amounted to a binaural impairment of 35.67%, which the parties agree is a compensable hearing loss under § 9–650.

Because he was not asked to do so, Dr. Schwager did not calculate the binaural impairment in 1987. He told Mr. Yox of the audiometric test results and had him fitted for hearing aids, which Yox said reduced the ringing in his ears when he wore them. Mr. Yox wore the hearing aids at home but did not wear them to work. He acknowledged that he was aware in 1987 that his hearing loss was directly related to his employment. Yox continued to work for Tru–Rol until 1999, when the company closed and he obtained similar work elsewhere. He did not receive any further medical attention until 2000, because his ears "were still working." In deposition testimony, he indicated that it was not until 1998 that "my ears really left me." He said that his hearing in 1987 "was going down" but "wasn't as bad as it is now."

Mr. Yox returned to Dr. Schwager in June, 2000, after he had begun work for his new employer. From his examination, Dr. Schwager concluded that Yox's actual hearing loss had worsened since 1987 (33% in the right ear and 38% in the left ear) but that, because in making the necessary calculations for workers' compensation purposes he had to consider Yox's age, the binaural hearing impairment for compensation purposes had remained about the same, and, in fact, was a bit less.

In July, 2000, though continuing to work for the new employer as a press operator, Yox filed a workers' compensation claim against Tru–Rol for occupational disease due to "years exposure to high levels of industrial noise." To the question, "O/D Date Disablement," he responded "0/00/0000." Tru–Rol raised a number of issues in defense, but proceeded only on the § 9–711 statute of limitations. Through counsel, Yox responded that, in 1987, he did not know that he had a disablement that would entitle him to compensation benefits. The Commission determined that his knowledge of disablement was not the test—that the statutory test was whether there *was* a disablement and whether he knew that he had a

hearing loss that was attributable to his employment—and that the record revealed an affirmative answer to both. Accordingly, the Commission held that the claim was barred by limitations and denied it.

Mr. Yox sought judicial review in the Circuit Court for Baltimore County. After a *de novo* evidentiary hearing, that court entered an order reversing the Commission. The court acknowledged that the 1987 testing "demonstrated sufficient loss to have been compensable under the standards utilized by the Commission" and that it was clear from Dr. Schwager's records that a connection between the hearing loss and Yox's employment was "evident." The court nonetheless concluded that, because Yox had not lost any time from work and therefore suffered no wage loss or earning impairment, he had not suffered a "disablement" in 1987, or, indeed, in 2000, and that the § 9–711 statute of limitations had not even begun to run, much less expired: "limitations does not even begin to run until the hearing loss gives rise to incapacity to work, as set forth in LE §§ 9–711 and 9–502."

On Tru–Rol's appeal, the Court of Special Appeals reversed the Circuit Court judgment, holding that, in an occupational deafness case, limitations begins to run when "the hearing loss becomes compensable under Section 9–505, or when the employee 'first ha[s] actual knowledge that the disability [*i.e.,* the compensable hearing loss], was caused by the employment.' " *Tru–Rol v. Yox,* 149 Md.App. 707, 718, 818 A.2d 283, 290 (2003). The court noted that any other construction would be illogical, unreasonable, and inconsistent with common sense because it would allow a worker to be compensated for his or her hearing loss before the statute of limitations on the claim even began to run. *Id.* We granted *certiorari* to review the Court of Special Appeals decision and, because we believe that it is correct, shall affirm it.

## DISCUSSION

In *Belschner v. Anchor Post,* 227 Md. 89, 92, 175 A.2d 419, 420 (1961), we pointed out that, as first enacted in 1914, the

Workers' Compensation Law provided compensation only for disability or death of an employee from an "accidental injury" that arose out of and in the course of employment. Under that statute, this Court had held, on a number of occasions, that an employee seeking compensation for a disability arising from an accidental injury did not need to show any loss of wages or earning capacity. *See Balto. Publishing Co. v. Hendricks,* 156 Md. 74, 143 A. 654 (1928); *Balto. Tube Co. v. Dove,* 164 Md. 87, 164 A. 161 (1933), both cited in *Belschner,* 227 Md. at 92, 175 A.2d at 421.

It was not until 1939 that the law was amended to provide compensation for injuries arising from occupational disease. *See* 1939 Md. Laws, ch. 465. In clear contrast to the situation stemming from an accidental injury, however, the 1939 law did not permit compensation for occupational disease unless and until the employee was no longer able to work in the last occupation in which he/she was exposed to the hazards of the disease. That was evident from at least two provisions of the law—one a substantive provision and one a definition. Section 32B, which the 1939 law added to art. 101 of the Code, provided compensation for an employee who suffered from a defined occupational disease *"and is thereby disabled from performing his work* in the last occupation in which he was injuriously exposed to the hazards of such disease...." (Emphasis added). In order to be entitled to compensation under that section, the employee had to be "disabled from performing his work." The 1939 law also added some new definitions to § 65 of art. 101, among which were definitions of "disablement" and "disability." New § 65(15) defined "disablement," for purposes of the newly enacted provisions dealing with occupational disease, as "the event of an employee's becoming *actually incapacitated,* either partially or totally, because of an occupational disease, *from performing his work* in the last occupation in which exposed to the hazards of such disease" and it defined "disability" as "the state of being so incapacitated." (Emphasis added).

Because an injury arising from an occupational disease was compensable only if the employee became incapacitated from

performing his/her work, the law needed to provide, and did provide, a special statute of limitations for occupational disease claims. With respect to disabilities arising from accidental injury, the existing law required that a claim for compensation be made within one year after the beginning of the disability. Under the judicial gloss we had given to the statute, such a claim could be filed while the employee was still working at his/her occupation. Failure to file the claim within that one year period constituted a "complete bar" unless the failure was induced by fraud. *See* Maryland Code, art. 101, §§ 50, 51 (1939). With respect to occupational disease claims, however, the 1939 Act specified, in § 32F, that a claim was barred if not filed within one year "from the date of *disablement* or death." (Emphasis added). The bracket was thus clear: a non-fatal occupational disease claim could not be filed until the employee was actually incapacitated from work, but it had to be filed within one year thereafter.

The 1939 law limited the right to recover compensation for occupational disease to certain enumerated diseases, mostly poisonings of one kind or another, and hearing loss was not among the listed maladies. It was not until 1951, with the enactment of 1951 Md. Laws, ch. 287, that coverage was provided for all occupational disease. At that point, hearing loss disability became compensable whether it resulted from an accidental injury (a sudden traumatic event) or an occupational disease (repeated exposure to loud noise). Hearing impairment was a scheduled loss, *i.e.*, the law then provided for the amount of compensation to be paid for the total loss of hearing in one ear and in both ears. *See* Maryland Code, art. 101, § 36(b) (1957).

In *Belschner*, the claim was initially for hearing loss resulting from accidental injury—a spark flying into one of Mr. Belschner's ears—but it was amended to assert that the disability was the result of an environment of loud noises over a period of time. That made it an occupational disease claim. Belschner worked as a saw operator, and he continued to work at that job even after the claim was amended and while it was litigated. Notwithstanding a stipulation that Belschner suf-

fered a 44% binaural loss of hearing due to industrial expo-
sure, the Commission found that he did not sustain an occupa-
tional disease and therefore denied the claim. The Circuit
Court, on judicial review, affirmed, and so did we.

We reached that conclusion by examining the two provisions
noted above—then § 22(a) of art. 101, allowing compensation
for occupational disease only when the employee was "thereby
disabled from performing his work in the last occupation in
which he was injuriously exposed to the hazards of such
disease," and then § 67(15), defining "disablement," for pur-
poses of § 22, as "the event of an employee's becoming
actually incapacitated . . . because of an occupational disease,
from performing his work in the last occupation in which
exposed to the hazards of the disease." Contrasting those
statutory requirements for occupational diseases from our
holdings with regard to accidental injuries, we held that "the
word 'disability' means one thing when used in providing
compensation for injury caused by an occupational disease but
means something different when used in providing compensa-
tion for accidental injury." *Belschner, supra,* 227 Md. at 93,
175 A.2d at 421.

Because Belschner's claim was for occupational disease and
his hearing loss did not affect his continued employment as a
saw operator, the Court held that the loss was not compensa-
ble. We treated Belschner's occupational hearing loss just
like any other occupational disease—non-compensable unless
the employee was unable to continue working in the occupa-
tion that produced the disability. We noted at the end of the
Opinion that "[i]f there is a need to liberalize the law or
change what we think it plainly means, that is a legislative, not
a judicial function." *Id.* at 95, 175 A.2d at 422–23.

The Governor's Commission to Study Maryland Workmen's
Compensation Laws, created in 1959 to monitor the workers'
compensation law and make recommendations for change,
eventually responded to *Belschner* in its Seventh Report to
the Governor, in February, 1967, with a recommendation that
the law be amended "to provide for occupational loss of

hearing," *i.e.*, a separate provision dealing specifically with hearing loss. 1967 Seventh Report Of The Governor's Commission To Study Maryland Workmen's Compensation Laws, at 2. The Commission noted:

> "[a]t the present time, an employee cannot recover for occupational loss of hearing until he shows a loss of wages, due to court interpretation of the law; and, in many cases, the time elapsed invokes limitations and the employee receives no compensation."

*Id.*

A bill recommended by the Commission was introduced into the 1967 session of the General Assembly and was enacted as 1967 Md. Laws, ch. 155. In a new § 25A(a) to art. 101, the Legislature provided that the condition it called "occupational deafness" would be compensated "according to the terms and conditions of this section." Section 25A then set forth a technical set of criteria for when occupational deafness would be compensable. Essentially, it stated that a hearing loss in excess of 15 decibels in three frequencies (500, 1,000, and 2000 cycles per second) would be compensable. In § 25A(g), the Legislature provided that, notwithstanding any other provision of the article, a claim for scheduled income benefits could not be filed "until the lapse of six full consecutive calendar months after the termination of exposure to harmful noise in employment" and that "[t]he time limitation for the filing of claims for occupational deafness shall not begin to run earlier than the day following the termination of such six months' period." [1]

---

1. That is not an unique provision with respect to hearing loss cases. Similar provisions are found in the workers' compensation laws of Georgia (O.C.G.A.34–9–264(c)), Missouri (Mo.Stat.287.197.7), and South Dakota (S.D. Codified Laws 62–9–12). In 1980, the six-month provision in § 25A(g) was repealed as part of a more general revision of the occupational disease laws. *See* 1980 Md. Laws, ch. 706. The only explanation found in the legislative files for the deletion of the six-month provision is testimony from a Dr. Grace Ziem, who both practiced occupational medicine and taught it at Johns Hopkins and Baltimore City Hospitals and at OSHA, to the effect that any increase in hearing following termination of exposure to harmful noise is tempo-

The wording of the 1967 statute left something to be desired, but, in *Crawley v. General Motors Corp.,* 70 Md.App. 100, 519 A.2d 1348, *cert. denied,* 310 Md. 147, 528 A.2d 473 (1987), the Court of Special Appeals, after reviewing the legislative history of the statute, correctly concluded that which is now conceded—that the legislative intent was not only "to provide technical criteria for measuring occupational loss of hearing but also to make such loss compensable without regard to inability to work or loss of wages." *Id.* at 107, 519 A.2d at 1352. The court thus held that "an employee who suffers from a condition of impaired hearing resulted from protracted exposure to noise in the course of his occupation, but who has not yet experienced any 'disablement,' *i.e.,* loss of wages or capacity to perform his regular work, is entitled to receive worker's compensation." *Id.* at 101, 519 A.2d at 1349.

In 1991, as part of the general code revision process, art. 101 was repealed, and its provisions, constituting the workers' compensation law, were recodified as title 9 of the Labor and Employment Article. The new article split the former provisions between subtitles 5, dealing with the entitlement to compensation, and 6, dealing with benefits. Section 9–502 is the *general* provision requiring compensation for injuries due to occupational disease. It begins, in subsection (a) by defining "disablement" for purposes of *that* section ("*In this section,* 'disablement' means . . ."). (Emphasis added). As in the predecessor statutes, the term is defined as "the event of a covered employee becoming partially or totally incapacitated: (1) because of an occupational disease; *and* (2) from performing the work of the covered employee in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease." (Emphasis added). The defined term appears only twice in § 9–502, both times in the subsection that provides generally for compensation for injuries arising from occupational disease. As

rary, that hearing returns to its permanent amount of loss within 24 hours, and that the six month delay is "unscientific."

relevant here, § 9–502(c) and (d) require compensation to "a covered employee of the employer for disability of the covered employee resulting from an occupational disease" but "only if: (1) the occupational disease that caused the death or disability: (i) is due to the nature of an employment in which hazards of the occupational disease exist and the covered employee was employed *before the date of disablement;* or (ii) has manifestations that are consistent with those know to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment in which the covered employee was employed *before the date of disablement* . . . ." (Emphasis added).

Section 9–505 deals specifically with occupational deafness— hearing loss due to occupational disease rather than accidental injury. The current version requires an employer to provide compensation *"in accordance with this title"* to a covered employee for loss of hearing due to industrial noise in the frequencies of 500, 1,000, 2,000, and 3,000 hertz. (Emphasis added).

Section 9–505 says nothing about "disablement." That is because "disablement," as defined in § 9–502(a) for purposes of other occupational diseases, is not required as a condition to compensation for occupational deafness. If "disablement," *as so defined,* applied to occupational hearing loss claims, as Yox argues and our dissenting colleagues seem to believe, the whole purpose of the 1967 enactment, repealing the decision in *Belschner* and allowing compensation even when there is no wage loss or impairment, would be negated. As the *Crawley* court made clear, the Legislature intended to make occupational hearing loss compensable without regard to "disablement" as generally defined.

Section 9–711(a)—the general limitations provision applicable to occupational diseases—provides that "[i]f a covered employee suffers a disablement or death as a result of an occupational disease, the covered employee or the dependents of the covered employee shall file a claim with the Commission within 2 years . . . after the date: (1) of disablement or death;

or (2) when the covered employee or the dependents of the covered employee first had actual knowledge that the disablement was caused by the employment." Notwithstanding that § 9–502(a) expressly limits the definition of "disablement" to that section, which is not only consistent with, but required by, the objective of § 9–505, Yox and the dissent would import that definition into § 9–711(a) and thus apply it as well to claims for occupational hearing loss. What they overlook, however, is the fact that, in cases of occupational hearing loss, that definition of "disablement" does not and cannot apply, because it is wholly inconsistent with the substance and avowed purpose of § 9–505.

That is not to say that there is no statute of limitations for occupational hearing loss claims. We try to read statutes in harmony, so that all provisions can be given reasonable effect. *See Balto. Gas & Elec. v. Public Serv. Comm'n*, 305 Md. 145, 157, 501 A.2d 1307, 1313 (1986) ("[A] provision contained within an integrated statutory scheme must be understood in that context and harmonized to the extent possible with other provisions of the statutory scheme"); *State v. Ghajari*, 346 Md. 101, 115, 695 A.2d 143, 149 (1997) (*quoting State v. Harris*, 327 Md. 32, 39, 607 A.2d 552, 555 (1992)) ("We presume that the legislature intends its enactments 'to operate together as a consistent and harmonious body of law.' "); *Carter v. Maryland Management*, 377 Md. 596, 613, 835 A.2d 158, 168 (2003) (same). We do not interpret statutes in ways that produce absurd results that could never have been intended by the Legislature.

The 1967 statute, now spread between § 9–505 and §§ 9–649 through 9–652, provided a different, and entirely rational, definition of "disablement" in occupational hearing loss cases. In place of wage loss or impairment—the objective standard applicable to other occupational diseases—it substituted the specific objective criteria for measuring compensable hearing loss. If a covered employee suffers that degree of hearing loss, he/she is, for purposes of compensation, disabled. That is what "disablement" means in occupational hearing loss

cases.  That is all it could mean if § 9–505 itself is to have any meaning.  When read that way, § 9–711 makes perfect and harmonious sense.  A claim for occupational hearing loss must be filed within two years after the date when the employee (1) first suffered the requisite degree of hearing loss, and (2) first had actual knowledge that *that* disablement was caused by the employment.

In this case, Mr. Yox undisputably suffered that disablement and had actual knowledge that it was caused by his employment some 13 years before he filed his claim.  That is why the claim was properly rejected.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.

BELL, C.J., ELDRIDGE and BATTAGLIA, JJ., Dissent.

Dissenting Opinion by BATTAGLIA, J. which BELL, C.J. and ELDRIDGE, J., join.

I respectfully dissent.  Although the majority concedes that Section 9–711(a) is the general limitations provision applicable to occupational diseases, it declines to apply that section as it is written to occupational hearing loss, an occupational disease, because it does not like the result.  Instead, the majority creates its own statute of limitations period for occupational hearing loss claimants.  In so doing, the majority ignores the plain language of the statute, declines to adhere to the canon of statutory construction that any uncertainty in the Worker's Compensation Act should be resolved in favor of the claimant, and usurps the General Assembly's role in crafting workers' compensation policy.

As we have often said, when we construe statutes, our goal is to "identify and effectuate the legislative intent underlying the statute(s) at issue."  *Derry v. State*, 358 Md. 325, 335, 748 A.2d 478, 483 (2000); *see also Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444, 697 A.2d 455, 458 (1997); *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730, 731 (1986).  The best source of legislative intent is the statute's plain language.  *Beyer v. Morgan State*

*Univ.,* 369 Md. 335, 349, 800 A.2d 707, 715 (2002). When the language is clear and unambiguous, our inquiry ordinarily ends there. *Id.* This Court will "neither add nor delete words in order to give the statute a meaning not otherwise communicated by the language used." *Harris v. Bd. of Educ.,* 375 Md. 21, 31, 825 A.2d 365, 371(2003)(quoting *Blind Indus. & Servs. v. Maryland Dep't of Gen. Servs.,* 371 Md. 221, 231, 808 A.2d 782, 788 (2002)); *Mutual Life Ins. Co. v. Ins. Comm'r,* 352 Md. 561, 573, 723 A.2d 891, 896 (1999)(explaining that the Court will not, "under the guise of construction, . . . supply omissions in the statute, . . . or . . . insert exceptions not made by the Legislature"); *Amalgamated Casualty Ins. Co. v. Helms,* 239 Md. 529, 535, 212 A.2d 311, 316 (1965)(opining that, "as a general rule a court may not surmise a legislative intention contrary to the plain language of a statute, nor insert or omit words to make the statute express an intention not evidenced in its original form"). Even when the statutory language is clear, we construe the provision at issue in light of the statutory scheme's overall purpose and in the context in which the words of the statute are used. *Polomski v. Mayor and City Council of Baltimore,* 344 Md. 70, 75–76, 684 A.2d 1338, 1340 (1996). We, thus, utilize a "commonsensical" approach to statutory interpretation so that we may best effectuate the General Assembly's intent. *Graves v. State,* 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001).

In Maryland, occupational hearing loss is an occupational disease. *Belschner v. Anchor Post Products, Inc.,* 227 Md. 89, 91–92, 175 A.2d 419, 420–21 (1961); *Armco Steel Corp. v. Trafton,* 35 Md.App. 658, 659 n. 1, 371 A.2d 1128, 1129 n. 1 (1977), *cert. denied,* 281 Md. 733 (1977). The statute of limitations for occupational disease begins to run at disablement under Section 9–711 of the Worker's Compensation Act, codified under Maryland Code, Sections 9–101—9–1201 of the Labor and Employment Article (1991, 1999 Repl.Vol.). The trigger of "disablement" is not defined in that provision. Section 9–502(a) of the Act defines disablement for occupational diseases:

(a) *"Disablement" defined.*—In this section, "disablement" means the event of a covered employee becoming partially or totally incapacitated:

(1) because of an occupational disease; and

(2) from performing the work of the covered employee in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease.

In *Mayor and City Council of Baltimore v. Schwing,* 351 Md. 178, 717 A.2d 919 (1998), we determined that Section 9–502(a)'s definition of disablement applies to the term disablement used in Section 9–711. *Id.* at 181, 717 A.2d at 920 (accepting the Court of Special Appeals' holding in *Helinski v. C. & P. Telephone Co.,* 108 Md.App. 461, 672 A.2d 155, *cert. denied,* 342 Md. 582, 678 A.2d 1047 (1996), that disablement means incapacitation or inability to work for the purposes of Section 9–711 in a case where the claimant suffered from contact-allergic dermatitis of the eyelid). The majority, thus, is incorrect in its assertion that Section 9–502(a)'s definition of disablement may not be "import[ed]" to Section 9–711(a). We concluded otherwise in *Schwing.* Our determination in that case should control here as well.

Although the majority does not discuss *Schwing,* it does undertake an analysis of Section 9–505—an analysis that I conclude is faulty. The majority seems to support its contention that occupational hearing loss claims are distinct from other occupational diseases with respect to the limitations period because Section 9–505 instructs that compensation should be provided "in accordance with this title." The title, in this instance, is Title 9 of the Labor and Employment Article, which codifies the entire Worker's Compensation Act. If anything, the fact that compensation for occupational hearing loss claimants should be provided "in accordance with this title" weakens the majority's argument, as the statute of limitations period for occupational diseases is found also in Title 9. *See* Section 9–711.

There is nothing unusual about this. For example, Section 9–709 is the statute of limitations period for claims for accidental injuries, although Section 9–501 contains the provisions requiring compensation for such injuries. Like Section 9–505, Section 9–501 also instructs that its provisions are to be read "in accordance with this title." We have held that Section 9–709's statute of limitations period applies to Section 9–501. *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 440, 677 A.2d 73, 76–77 (1996)(explaining that Section 9–709 provides a two-year statute of limitations period for employees suffering accidental injuries to bring a claim). Likewise, we should hold that Section 9–711(a)'s statute of limitations period applies to Section 9–505.

Asserting the unsurprising fact that Section 9–505 should be read in accordance with Title 9, the majority then argues that, because Section 9–505 "says nothing about 'disablement,'" disablement does not trigger the statute of limitations for occupational hearing loss cases. But while the majority is right to say that Section 9–505 says nothing about disablement, the majority neglects to observe that the section says nothing about the statute of limitations either. Rather, it instructs, as the majority points out, that compensation should be provided to claimants "in accordance with this title." Section 9–711(a) is the statute of limitations period for occupational diseases in Title 9. The fact that it is triggered by disablement does not change how it applies.

Nevertheless, the majority seems to suggest that, because Section 9–505 does not define disablement, disablement simply cannot be part of the statute of limitations period for an occupational hearing loss claim. But, as the intermediate appellate court noted, there are instances when occupational hearing loss prevents people from working,[1] and surely these

---

1. *See* NUMBER OF NONFATAL OCCUPATIONAL INJURIES AND ILLNESSES INVOLVING DAYS AWAY FROM WORK BY SELECTED WORKERS AND CASE CHARACTERISTICS AND NATURE OF INJURY OR ILLNESS, ALL UNITED STATES, PRIVATE INDUSTRY, 2001, U.S. DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, *available at* http://www.bls.gov/data/home.htm (indicating 171 reported cases of employees missing work due to deafness, hearing loss or impairment).

disabled claimants would have to meet the threshold hearing loss requirements pursuant to Section 9–505 to be compensated. As the majority rightly observes and as the *Crawley* court pointed out, Section 9–505 defines when occupational hearing loss is *compensable* regardless of whether or not the claimant was prevented by the injury from working. *Crawley v. General Motors Corp.*, 70 Md.App. 100, 107, 519 A.2d 1348, 1352, *cert. denied*, 310 Md. 147, 528 A.2d 473 (1987). In this way, contrary to the majority's reading of the statute, some occupational hearing loss claimants may be disabled even though "disablement" is not mentioned in Section 9–505. Yet the trigger of disablement required by Section 9–711 could—and presumably does—still apply.

Furthermore, the fact that the General Assembly deemed it necessary to enact Section 9–505 to allow compensation to occur while the occupational hearing loss claimant continued working does not compel the conclusion that it intended to accelerate the statute of limitations for such claims as well.[2] Rather, such a result is consistent with the benevolent nature of the statute, *see Harris*, 375 Md. at 57, 825 A.2d at 387, and it is consistent with the fact that the General Assembly decided to carve out a benefit for hearing loss claimants under Section 9–505.

In addition, reviewing Section 9–505's legislative history does not reveal any intent on the General Assembly's part to provide an alternative statute of limitations for occupational hearing loss claimants. In 1967, when the General Assembly

---

**2.** The General Assembly might have provided more time for occupational hearing loss claimants who are able to continue working because, generally, hearing loss often begins with a slight impairment and gradually worsens over time. *See* RICHARD P. GILBERT & ROBERT L. HUMPHREYS, JR., MARYLAND WORKERS' COMPENSATION HANDBOOK § 8.13 (2d ed.1993)(describing occupational hearing loss as a "hybrid form of occupational 'disease' " because, although hearing loss ordinarily occurs over time, it can be caused by an immediate injury as well); 3 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 52.05 (2003)(noting that, given the nature of the disease, individuals suffering from occupational hearing loss often are able to continue to work and to draw wages).

carved out an exception to the *Belschner* rule by enacting Section 25A of former Article 101, it did so in response to the Governor's 1967 Commission to Study Maryland Workmen's Compensation Laws. *See* 1967 Md. Laws, ch. 155; 1967 SEVENTH REPORT OF THE GOVERNOR'S COMMISSION TO STUDY MARYLAND WORKMEN'S COMPENSATION LAWS (hereinafter "Commission Report"). With respect to occupational hearing loss, the Governor's Commission noted that it made its recommendation because "an employee cannot recover for occupational loss of hearing until he shows a loss of wages, due to court interpretation of the law." Commission Report at 2. Concerned with the fact that the "employee receive[d] no compensation" in spite of suffering hearing loss, the Commission made its recommendation because it believed hearing loss claimants should be compensated irrespective of disablement. *Id.; see also Crawley,* 70 Md.App. at 107, 519 A.2d at 1352. When the General Assembly enacted Section 9–505, it clearly intended to provide a benefit to hearing loss claimants; I, however, discern no legislative intent to create a separate statute of limitations for hearing loss claims or that the statute of limitations existing at that time, also triggered by disablement, did not apply.

For these reasons, I believe that a plain reading of the statutory provisions at issue, a review of our cases regarding these provisions, and Section 9–505's legislative history necessitates the conclusion that disablement triggers the statute of limitations for occupational hearing loss. Even if the majority believes the Act is uncertain or ambiguous on this point, however, I also believe we should read the Act's provisions in favor of the claimant, in conformance with our repeated assertion that "the Workers' Compensation Act ... should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant." *Harris,* 375 Md. at 57, 825 A.2d at 387 (quoting *Mayor of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–62 (1995)). We have also explained that all of the provisions of the Workers' Compensation Act must be

read together, and this Court may neither "stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail." *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 473, 784 A.2d 569, 573 (2001)(quoting *Philip Elecs. North America v. Wright,* 348 Md. 209, 212, 703 A.2d 150, 151 (1997)(superceded by statute on other grounds)). While the Court "may not create ambiguity or uncertainty in the Act's provisions where none exists so that a provision may be interpreted in favor of the injured claimant," any existing ambiguity or uncertainty should be resolved in the claimant's favor. *Id.* "The Workers' Compensation Act ... should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Harris,* 375 Md. at 57, 825 A.2d at 387 (quoting *Cassidy,* 338 Md. at 97, 656 A.2d at 761–62). The majority ignores these teachings.

The majority creates a separate statute of limitations period for occupational hearing loss claimants. While the majority's judicially-created statute of limitations may be reasonable policy, it is up to the Legislature to develop workers' compensation policy—not this Court. *Philip Elecs. North America v. Wright,* 348 Md. 209, 229, 703 A.2d 150, 159 (1997)(superceded by statute)(explaining that the "sensitive balancing of respective interests" involved in workers' compensation policy is appropriately within the province of the General Assembly). It is inappropriate for this Court to supply omitted words or remedy defects in a statute when there is no evidence to suggest we should do as such in the text of the statute or in the legislative history. *See Dyer v. Otis Warren Real Estate Co.,* 371 Md. 576, 581, 810 A.2d 938, 941 (2002)(stating that "[w]here the statutory language is plain and unambiguous, a court may neither add nor delete language so as 'to reflect an intent not evidenced in that language,' nor may it construe the statute with 'forced or subtle interpretations that limit or extend its application'" (citation omitted)); *Amalgamated Cas. Ins.,* 239 Md. at 535, 212 A.2d at 316 (stating that "as a general rule a court may not surmise a legislative intention contrary to the plain language of a statute, nor insert or omit

words to make the statute express an intention not evidenced in its original form"). The majority oversteps its role.

In conclusion, when the General Assembly enacted Section 9–505, it did so to define when occupational hearing losses become compensable, and it did not change the statute of limitations for such claims in any way. Perhaps it should have; perhaps it will. But that is the General Assembly's prerogative, not ours. We should refrain from imposing our concept of sound workers' compensation policy in this arena and leave that task to the General Assembly, where it belongs. I dissent.

Chief Judge BELL and Judge ELDRIDGE authorize me to state that they join in this dissent.