*Pennsylvania Manufacturers Association v. William Cree, et al.*
No. 730, September Term 2022. Opinion by McDonald, J.


**Workers' Compensation Act – Occupational Disease – Last Injurious Exposure Rule.**
The Maryland Workers' Compensation Act provides compensation to workers and their dependents for a worker's death or disability from an occupational disease contracted as a result of and during the course of employment.  If the worker contracted the disease as a result of hazardous exposures while employed at more than one employer, a bright-line rule in the statute assigns that liability to the last employer chronologically – and, if that employer was insured by more than one insurer during that time, to the last insurer chronologically of that employer – during the period of hazardous exposure.  That provision is known as the last injurious exposure rule.

**Workers' Compensation Act – Occupational Disease – Occupational Hearing Loss – Applicability of Last Injurious Exposure Rule.**  While certain provisions of the Maryland Workers' Compensation Act, including the last injurious exposure rule, apply generally to occupational disease claims, the Act treats claims of occupational hearing loss differently in certain respects.  In particular, when a claimant was exposed to harmful noise while working for more than one employer, liability may be apportioned among those employers either in equal shares or based on the amount of the worker's exposure at each employer.  However, the statute is silent as to how liability is assigned among insurers, if any of those employers was insured by more than one insurer during the period of hazardous exposure.  In the absence of specific direction in the statute, the same method of allocation of liability should be applied to insurers as to the employers that they insure.

Maryland Code, Labor & Employment Article, §§9-502(b), 9-505, 9-649 through 9-652.

PENNSYLVANIA MANUFACTURERS
ASSOCIATION

v.

WILLIAM CREE, ET AL.

Graeff,
Beachley,
McDonald, Robert N.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by McDonald, J.

Filed: September 6, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

The Maryland Workers' Compensation Act ("Act") provides benefits to employees who suffer disability or death from an occupational disease – a disease contracted as a result of and during the course of employment. An occupational disease may result from exposure to workplace hazards over a period of time. That period may encompass the individual's employment with more than one employer and, even if there is only one employer, that employer may have obtained workers' compensation insurance from different insurers over that period. The General Assembly has provided a bright-line general rule in the statute that assigns liability for an occupational disease claim entirely to the employer and insurer that are last in chronological order during the relevant period. This provision is known as the "last injurious exposure rule" – an all-or-nothing rule that furthers the efficient processing of claims because it dispenses with any need to allocate liability based on causation.

Hearing loss attributable to exposure to noise in the workplace may be compensable as an occupational disease under the Act, but is subject to certain specific rules. Among the provisions specific to occupational hearing loss, the Act provides that, when there are multiple employers over the period of the employee's exposure to harmful noise in the workplace, liability may be apportioned among those employers either in equal shares or in some other manner warranted by the evidence. Thus, the last injurious exposure rule does not apply. The statute is silent on the allocation of liability among the insurers of those employers.

This case presents the question whether the last injurious exposure rule applies, solely as to the apportionment of liability among an employer's insurers, when a workers' compensation claim is based on occupational hearing loss.

For the reasons set forth in this opinion, we hold that it does not.

# I

# Background

## A. *Legal Landscape*

### 1. Workers Compensation Act – Generally

*Benefits and Insurance*

The Maryland Workers' Compensation Act provides compensation for death or disability suffered by an individual as a result of an accidental injury or an occupational disease related to the individual's employment. Maryland Code, Labor & Employment Article ("LE") §9-101 *et seq.* The Act requires employers, including governmental entities, to provide workers' compensation benefits, either by maintaining insurance with an authorized insurer or by self-insuring in accordance with the statute. LE §9-402(b).

*Uninsured Employers' Fund*

On occasion, an employer fails to comply with its statutory obligation to obtain insurance or to self-insure. The liability of an uninsured employer, or of a self-insured employer that becomes insolvent, may be assigned to the Uninsured Employers' Fund ("UEF"), a State entity created for that purpose. LE §§9-405(g), 9-1002; LE §10-301 *et seq*.

*Last Injurious Exposure Rule*

In many cases involving occupational diseases, the disease may be the result of hazardous exposures that occurred during the claimant's employment with more than one employer.  In that situation, liability for a workers' compensation claim is allocated by statute according to what is known as the "last injurious exposure rule."  Under that rule, the entire liability for the occupational disease is assigned to the last of those employers chronologically and, in turn, to that employer's last insurer chronologically.  LE §9-502(b).  No liability is apportioned to prior employers or insurers.  This provides the Workers' Compensation Commission ("Commission") with an arbitrary bright-line rule that is simpler to administer than attempting to apportion liability among employers or insurers and that eliminates disputes over relative causation.  *See Lowery v. McCormick Asbestos Co.*, 300 Md. 28, 48 (1984).

2.      Benefits and Liability for Occupational Hearing Loss

In provisions separate from those that generally concern accidental injuries and occupational diseases, the Act provides that, in some circumstances, a loss of hearing due to exposure to harmful noise at the workplace – sometimes referred to in the statute as "occupational deafness" or "occupational hearing loss" – is compensable under the Act.[1] LE §9-505; *see Green v. Carr Lowery Glass Co.*, 398 Md. 512, 516-18 (2007).  The Act includes special provisions concerning the measurement of hearing loss and the extent and

_____

[1] A claim of occupational hearing loss may result from either an accidental injury or an occupational disease.  *Yox v. Tru-Rol Co.*, 380 Md. 326, 332 (2004).

3

allocation of liability related to such a claim. LE §9-505, §9-649 *et seq.*; *see generally Montgomery County v. Cochran*, 471 Md. 186, 194-95, 211-17 (2020).

At issue in this case are special provisions concerning the extent and allocation of liability for occupational hearing loss claims. Under those provisions, the claimant must have worked for the employer in a job that exposed the claimant to harmful noise for at least 90 days. LE §9-505(b). If so, the employer is liable for the "full extent" of the claimant's occupational hearing loss. LE §9-651(a). However, the employer's liability may be limited if the employer can establish "by competent evidence" the extent of the claimant's hearing deficit prior to the claimant's exposure to harmful noise at the employer's workplace. LE §9-651(b). Moreover, an employer may implead into the workers' compensation proceeding "any other employer in whose employment the employee was exposed to harmful noise." LE §9-652(a). If the Commission finds that an impleaded employer would also be liable to the employee, the employer against whom the claim was filed may obtain contribution from the impleaded employer. LE §9-652(c). Liability is then allocated among the employers by a bright-line rule – equal shares – or otherwise if "the evidence warrants a different apportionment." *Id.*

Thus, unlike the treatment of claims involving other occupational diseases, liability in occupational hearing loss cases is allocated among employers in accordance with a determination of causation, or a bright-line rule quite different from that of the last injurious exposure rule. At least that is the case with respect to employer liability; the occupational hearing loss provisions do not explicitly refer to insurers.

*B.*    ***Factual and Procedural Background***

1.    Work History and Hearing Loss Diagnosis

Appellee William Cree worked as a police officer for almost 25 years.[2]  His career spanned police departments in three Maryland jurisdictions:  (1) the Town of Riverdale[3] ("the Town") during 1971 to 1974; (2) the City of Laurel ("the City") during 1974 to 1980; and (3) Prince George's County ("the County") during 1980 to 1995.  The City is an Appellee in this appeal.

On August 31, 2018, an audiologist evaluated Mr. Cree's hearing and determined that his hearing had deteriorated to the extent that it met the criteria for compensation under LE §9-650 of the Act.

2.    The Claim

On February 6, 2019, Mr. Cree filed a claim with the Commission against the County, alleging binaural hearing loss[4] with a date of disablement of August 31, 2018.  The County contested the claim.  In addition, the County impleaded both of Mr. Cree's

---

[2] Although Mr. Cree is the first-named Appellee in this appeal, he did not file a brief or otherwise participate in the appeal.  Presumably that is because the issue on appeal does not concern the merits of his claim or the amount of compensation, but rather the allocation of part of that liability to an insurer of one of his past employers.

[3] The Town changed its official name to "Riverdale Park" in 1998.

[4] "Binaural" means relating to both ears.  *See, e.g.,* Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/binaural. (last accessed July 24, 2023).  Binaural hearing loss is calculated by measuring an individual's hearing ability in each ear and applying a statutory formula. *See* LE §9-650(d).

prior police department employers – the Town and the City, which is one of the Appellees in this appeal.

The City in turn impleaded Appellant Pennsylvania Manufacturers Association ("PMA"), which had insured the City during roughly half of the period that Mr. Cree had worked in the City's police department during the 1970s.[5] Because the City was unable to determine how it had been insured during the rest of that period, the City was considered to be uninsured during that time. Appellee UEF was therefore impleaded as an additional party.

3.    Proceedings before the Commission

On April 30, 2021, the Commission held a remote hearing concerning issues related to Mr. Cree's claim. In addition to Mr. Cree, all three employers (the Town, the City, and the County) and various insurers participated in the hearing.

Among the issues raised by the parties was whether PMA should be considered the City's insurer during Mr. Cree's employment with its police department.[6] Pertinent to that issue, Mr. Cree testified that his exposure to industrial noise while employed by the City's police department was consistent over the six years that he worked there – including the period after the PMA policy expired. PMA argued that it would not be considered the last

---

[5] PMA insured the City during the period from August 12, 1976 to July 28, 1979.

[6] The Commission conducted other proceedings and resolved other issues concerning Mr. Cree's claim. There is no need to describe those in detail for purposes of this opinion.

6

insurer chronologically of the City and should therefore be relieved of any liability under the last injurious exposure rule.

On June 7, 2021, the Commission issued an order in which it found that Mr. Cree had sustained a disability in the form of binaural hearing loss as a result of an occupational disease, with a date of disablement of August 31, 2018. Pertinent to this appeal, the Commission also held that the last injurious exposure rule under LE §9-502(b) did not apply to Mr. Cree's claim. Instead, in accordance with the statute concerning occupational hearing loss, the Commission apportioned liability for the claim among the three police departments that had employed him during the period of exposure to industrial noise. In particular, with respect to the City, it found that the City was responsible for 25% of the claim and further found that PMA was liable as it had insured the City during the period of Mr. Cree's exposure to industrial noise.[7]

4.      Judicial Review

PMA initiated an on-the-record appeal in the Circuit Court for Prince George's County. The sole issue raised by PMA was whether the last injurious exposure rule should be applied to eliminate any liability of PMA.[8] The Circuit Court heard oral argument

---

[7] The Commission found that the County was liable for 63% of Mr. Cree's claim and that the Town was liable for 12% of the claim. That allocation corresponds to the approximate percentage of his police career that Mr. Cree spent with each jurisdiction. The allocation of liability among the three employers is not at issue in this appeal.

[8] PMA has not asserted that it is liable for only a proportionate share of the City's liability; rather, it argued that it should have no liability at all with respect to Mr. Cree's claim.
    The Town raised a separate issue in a cross-petition for judicial review. The Circuit Court's resolution of that issue is not at issue in this appeal.

7

during April 2022. On May 2, 2022, the court affirmed the Commission's decision in an oral opinion, which the court later incorporated in a written order.

PMA filed a timely notice of appeal to this Court. The Town and UEF have appeared in opposition and filed briefs as Appellees.

## II

## Discussion

As outlined earlier, in a typical workers' compensation claim based on an occupational disease, the "last injurious exposure rule" assigns liability for the claim solely to the employer who last employed the claimant during the period of exposure to workplace hazards that resulted in that disease. However, that rule does not apply when the claim is based on occupational hearing loss; instead, liability may be assigned in full to any employer where the claimant's exposure to hazardous noise met a statutory threshold or may be allocated in part to each employer for which the claimant worked during the period of exposure to hazardous noise.

In this appeal, it is undisputed that, in light of Mr. Cree's testimony that he was consistently exposed to industrial noise during his career as a police officer, each of his three police employers – the Town, the City, and the County – may be allocated a portion of the liability on his claim.

The sole issue raised by PMA is whether, in the context of an occupational hearing loss claim, the "last injurious exposure rule" governs whether an *insurer* is liable for a claim against an insured employer when the employer had more than one insurer during the period of the claimant's exposure to hazardous noise. If that rule governs an insurer's

8

liability, PMA would not be liable because its policy covering the City terminated before Mr. Cree experienced his last injurious exposure during his tenure with the City. If the rule does not apply, PMA is liable.

## A. Standard of Review

The issue raised by PMA is a question of law. In a workers' compensation case, an appellate court reviews a determination of a question of law *de novo*, without deference to the decision of the Commission or the decision of a circuit court. *Long v. Injured Workers' Ins. Fund*, 225 Md. App. 48, 57 (2015).

## B. Whether the Last Injurious Exposure Rule Applies to Hearing Loss Claims

The question whether the last injurious exposure rule applies is an issue of statutory construction. The method for resolving such a question is well established. "The goal of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. One begins with the text of the statute and the statutory scheme of which it is part. An examination of the legislative history helps to confirm conclusions drawn from the text or to resolve ambiguities. [C]onsideration is given to the consequences of alternative interpretations of the statute in order to avoid constructions that are absurd or unreasonable and to ground the court's interpretation in reality." *Westfield Ins. Co. v. Gilliam*, 477 Md. 346, 370 (2022) (internal quotation marks and citations omitted). Prior case law concerning the statute may also be informative. *Aleman v. State*, 469 Md. 397, 421 (2020). Finally, because the Act is a remedial statute, "it must be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its

9

benevolent purposes." *Reger v. Washington Co. Board of Education*, 455 Md. 68, 96 (2017); *see also* LE §9-102 (stating principles of construction for the Act).

The first task, then, is to examine the statutory text.

1. Statutory Text

The issue in this appeal requires an analysis of the relationship between the statutory provisions that establish general rules regarding occupational disease claims – in particular, those set forth in LE §9-502 – and those provisions that specifically govern claims of occupational hearing loss – which are set forth in LE §9-505 and §9-649 through §9-652.

*LE §9-502(b)*

As the heading of Subtitle 5 of the Act indicates, that subtitle provides general rules concerning the entitlement to, and liability for, compensation under the statute.[9] Certain general rules concerning claims based on occupational diseases are set forth in LE §9-502. The obligation of an employer (and the employer's insurer) to provide compensation for disability or death caused by an occupational disease is set forth in subsection (c) of LE §9-502. Subsection (b) of the statute in turn states another general rule – that the obligation to provide compensation is subject to the last injurious exposure rule:

---

[9] That heading is "Entitlement to and Liability for Compensation." While many headings in the Maryland Annotated Code were originally devised by legal publishers, this particular heading was enacted by the General Assembly and thus is part of the law. *See* Chapter 8, §2, Laws of Maryland 1991 at p. 845; *cf.* Maryland Code, General Provisions Article, §1-208 (providing that the captions or catchlines that may appear in sections or subsections of the code are not to be considered as titles, "[u]nless otherwise provided by law").

10

Subsection (c) of this section applies only to:

(1) the employer in whose employment the covered employee was last injuriously exposed to the hazards of the occupational disease; and

(2) the insurer liable for the risk when the covered employee, while employed by the employer, was last injuriously exposed to the hazards of the occupational disease.

LE §9-502(b).  Critically, however, subsection (c), and perforce subsection (b) stating the last injurious exposure rule, is qualified by the phrase "except as otherwise provided."  This proviso indicates that there are exceptions to these general rules.

*Occupational Hearing Loss Provisions*

As indicated earlier, among the more extensive exceptions to the general rules on occupational diseases are a number of provisions concerning occupational hearing loss. For example, LE §9-505 sets specific threshold requirements for compensation for occupational hearing loss.[10]  Moreover, a completely separate part of the statute – Part VII of Subtitle 6 of the statute – states certain rules peculiar to work-related claims of hearing loss.  *See* LE §9-649 through §9-652.[11]  Those provisions allow for the imposition of liability, to the "full extent" of the claim, on *any* employer for which the threshold

---

[10] In particular, hearing loss is compensable if suffered with respect to frequencies of 500, 1,000, 2,000, and 3,000 hertz.  LE §9-505(a); *see also* LE §9-650.  ("Hertz" is a measure of sound frequency, perceived by the ear as the pitch of the sound.)  The claimant must have been exposed to harmful noise for at least 90 days during the claimant's employment with the employer.  LE §9-505(b).  The claimant must also meet the additional criteria in LE §9-650 to have a compensable claim.  *See Green v. Carr Lowery Glass Co.*, 398 Md. 512, 525-26 (2007).

[11] As enacted by the General Assembly, Subtitle 6 of the Act is entitled "Benefits" and Part VII of that subtitle is entitled "Occupational Deafness."

11

requirements are met – not just the last employer chronologically.  Those provisions also create a process for an employer that receives such a claim to implead other employers of the claimant and for the allocation of liability among those employers equally or as otherwise warranted by the evidence – for example, evidence that permits a determination of causation.[12]  The hearing loss provisions obviously conflict with the last injurious

---

[12] The relevant provisions read as follows:

§9-651. Extent of liability

(a) *In general.*  Except as provided in subsection (b) of this section, an employer is liable for the full extent of the occupational deafness of a covered employee if:
(1) the employment of the covered employee by the employer has contributed to any extent to the occupational deafness of the covered employee; and
(2) the employer otherwise is liable under this section and §9-505 of this title.

(b) *Limitation on liability.*  An employer is liable only for the part of the deafness attributable to the employment by the employer if the employer establishes by competent evidence, including the results of a professionally controlled hearing test, the extent of the deafness of the covered employee that existed before exposure to harmful noise in the employment of the employer.

§ 9-652. Impleader

(a) *Right of employer.*  In a proceeding for compensation on the claim of a covered employee, an employer who is liable for the full extent of the occupational deafness of the covered employee may implead any other employer in whose employment the covered employee was exposed to harmful noise.

(b) *Notice of impleader.*  To implead another employer, the employer shall give to the impleaded employer and to the Commission notice on the form that the Commission requires.

exposure rule and therefore prevail over that rule under the "except as otherwise provided" proviso in LE §9-502(c). However, in discussing the party liable to provide benefits for a claim for occupational hearing loss, the provisions specific to that disease use the term "employer"; the term "insurer" does not appear in them.

*Textual Analysis*

PMA asserts that the "plain language" of the statute unambiguously requires application of the last injurious exposure rule to insurers in occupational hearing loss cases – and therefore requires reversal of the Commission decision with respect to PMA in this case. PMA's position has two prongs. First, PMA argues that the absence of the word "insurer" in LE §§9-651 and 9-652 of the occupational hearing loss provisions means that those apportionment and procedural provisions do not apply to insurers. Second, PMA's position is premised on the notion that the tabulation of the last injurious exposure rule in two paragraphs of LE §9-502(b) – one concerning employers (paragraph (1)) and one concerning insurers (paragraph (2)) – means that the last injurious exposure rule applies independently to insurers even when it does not apply to the employers that they insure.

---

(c) *Liability of impleaded employer*

(1) If the Commission finds that the impleaded employer would have been liable to the employee had the employee proceeded against the impleaded employer under the claim being adjudicated, the employer liable to the employee is entitled to an award that:
(i) is against the impleaded employer; and
(ii) may be enforced in the same manner as an award in favor of a covered employee.
(2) Unless the evidence warrants a different apportionment, the impleaded employer and the employer liable to the covered employee shall have equal liability to the employee.

13

Regarding PMA's first argument, does the absence of the word "insurer" in the provisions concerning liability for occupational hearing loss mean that, while liability for such a claim is allocated among multiple employers equally or on the basis of causation, any liability of insurers is still governed by the last injurious exposure rule?  Not necessarily.  A review of the entire Act reveals that, while it frequently refers to the obligation of an "employer or its insurer" to pay compensation,[13] it also often describes the liability to pay compensation solely with reference to an "employer" without mentioning an insurer.[14]  In other instances, liability and the obligation to pay compensation are stated in the passive voice with no specific reference to an "employer" or an "insurer."[15]  Nevertheless, as a general rule, an award against an employer under the Act is also binding on the employer's insurer.  *See* Maryland Code, Insurance Article, §19-402(b)(5) (requiring workers' compensation insurance policies to contain a provision requiring the insurer to cover the employer's liability for workers' compensation claims).  Given the

---

[13] *See, e.g.*, LE §9-605 ("If an employer or its insurer … pays compensation…"); LE §9-615(b) ("The employer or its insurer shall pay the weekly compensation …"); LE §9-621(b) ("The employer or its insurer shall pay …"); LE §9-627(a) ("… the employer or its insurer shall pay …"); LE §9-660(b) ("The employer or its insurer shall provide …"); LE §9-667 ("… the employer or its insurer shall reimburse …").

[14] *See, e.g.*, LE §9-501(a) ("… each employer of a covered employee shall provide compensation …"); LE §9-504(a) ("… an employer shall provide compensation …"); LE §9-505(a) ("… an employer shall provide compensation …"); LE §9-509(a) ("… the liability of an employer under this title is exclusive."); LE §9-651(a) ("… an employer is liable …").

[15] *See, e.g.*, LE §9-635 (A covered employee … shall be paid compensation …"); LE §9-643 ("A covered employee … shall be paid compensation …"); LE §9-683(d)(1) ("Death benefits shall be paid to 1 or more of the dependents …").

14

general requirement in the Act that an employer obtain insurance or satisfy the requirements to self-insure, the absence of the word "insurer" in many of these provisions does not necessarily mean that an insurer is beyond their purview.[16]

The word "insurer" does not appear at all in any of the provisions that specifically address liability for claims of occupational hearing loss; all speak only in terms of liability of the claimant's employer(s). *See* LE §§9-505, 9-649, 9-650, 9-651 & 9-652. But that does not mean that an employer's insurer is somehow exempt from liability for an occupational hearing loss claim. For example, the fact that LE §9-505 states that "an employer shall provide compensation to a covered employee for loss of hearing by the covered employee …," but makes no reference to an insurer, does not mean that the employer's insurer is absolved from liability for such a claim.

As to PMA's second argument drawn from statutory text – that the format of the two paragraphs of LE §9-502(b) necessarily means that they operate independently of one another – the statutory language does not explicitly endorse that interpretation. That argument, too, is inconclusive at best.

In short, a textual analysis alone does not unambiguously yield the conclusion urged by PMA. We next turn to the legislative history of the Act for any indication that the

---

[16] Without specifically analyzing the question, a treatise on Maryland workers' compensation law appears to assume that the allocation and procedural provisions of LE §§9-651 and 9-652 apply to insurers as well as the employers that they insure. *See* Clifford B. Sobin, 1 Maryland Workers' Compensation §9.4 (Oct. 2022 update) (referring to those provisions as applying to "employer/insurers' liability").

General Assembly intended to apply the last injurious exposure rule independently to insurers in a situation where that rule does not apply to employers.

2.      Legislative history

Now more than a century old, the Maryland Workers' Compensation Act has a long lineage.  The key provisions at issue in this case were first enacted before the General Assembly began preserving legislative bill files in 1975.  Nonetheless, it is useful to review the development of the provisions governing occupational hearing loss in the context of the Act as a whole.[17]

*1914 – Act applies to accidental injuries in the workplace*

As originally enacted in 1914, the Maryland Workers' Compensation Act provided compensation for accidental injuries that arose out of and in the course of employment. Chapter 800, Laws of Maryland 1914.  The Act created a no-fault system to provide employees who experienced work-related accidental injuries "with a certain, efficient, and dignified form of compensation" without regard to fault in lieu of certain common law remedies that would otherwise be available to injured workers.  *Polomski v. Mayor & City Council*, 344 Md. 70, 76-79 (1996) (describing the history of the statute).

*1939 – Act extended to occupational diseases with a last injurious exposure rule*

In 1939, the statute was amended to also provide compensation for injuries arising from 34 listed occupational diseases in addition to accidental injuries.  Chapter 465, Laws

---

[17] An excellent summary of the history of the hearing loss provisions of the statute appears in *Yox v. Tru-Rol Co.*, 380 Md. 326, 330-36 (2004) (Wilner, J.).

of Maryland 1939, *codified at* Maryland Code (1924), Article 101, §§32A through 32J.[18]

Occupational hearing loss was not among the listed diseases.[19] *See id.*, Article 101, §32A.

Claims based solely on occupational diseases potentially presented a new question concerning the allocation of liability under the Act. While an accidental injury generally would occur on a particular date while the claimant was working for a particular employer that presumably was insured by a particular insurer on that date, an occupational disease could result from the individual's exposure to hazards over a period of time during which the individual had various employers. Even if the claimant's injurious exposure occurred over time at only one employer's workplace, that employer may have insured the risk with different insurers for different parts of that period. This raised the question as to how to allocate responsibility for providing compensation among employers and the insurers of those employers.

In the 1939 amendments, the Legislature chose to adopt a "last injurious exposure rule" to eliminate any need to parse out relative fault among all of those potential parties. As one commentator observed at that time, in avoiding the need to litigate the extent to

---

[18] Shortly after enactment of these provisions, the 1939 compilation of the Maryland Code recodified the occupational disease provisions as Article 101, §§34 through 43. Like other such code revisions between 1888 and the early 1970s, the 1939 code compilation of Maryland statutes was accomplished by private editors and a legal publisher. (In contrast, the 1888 code and the most recent code revision that began in the early 1970s were accomplished by legislative enactments of the General Assembly.) *See* Alan M. Wilner, *Blame It All On Nero: Code Creation and Revision in Maryland* (February 14, 1984), available at https://perma.cc/ZS6G-RB8J.

[19] As indicated earlier, hearing loss was compensable if it resulted from a traumatic injury and was therefore part of an accidental personal injury. *See* footnote 1 above; *see also, e.g.*, Maryland Code (1924), Article 101, §36(3).

which each employer should be held responsible for an occupational disease, the last injurious exposure rule was "very practical, although undoubtedly some injustice must be done in its application." J. Nicholas Shriver, Jr., *The Maryland Occupational Disease Law*, 4 Md. L. Rev. 133, 143 (1940). The theory appears to be that, although that rule assigns liability somewhat arbitrarily, an employer held liable in one case may escape liability in the next and things will average out over the long run while eliminating a need to ascertain causation in every case. *See Lowery v. McCormick Asbestos Co.*, 300 Md. 28, 39 (1984) ("The operation of the rule … provides certainty in a way which is somewhat arbitrary. … It is fair to employers only if it is applied consistently so that liability is spread proportionately among employers by operation of the law of averages.") (internal quotation marks and citation omitted).

The 1939 amendments of the Act concerning occupational diseases included the last injurious exposure rule in the following language:

> Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall be liable therefor; …

Chapter 465, Laws of Maryland 1939, *as codified in* the 1924 version of the Maryland Code, Article 101, §32C. It was later recodified, in essentially identical language, as Article 101, §23(b) in the 1957 version of the Maryland Code.[20] The language and

---

[20] In the interim, the provision was recodified several times without any change in language as §36, and later §23, of the 1939 version of Article 101 of the Maryland Code, and as §22(b) of Article 101 of the 1951 version of the Maryland Code. In the 1957 version

codification of the last injurious exposure rule then remained unchanged until the early 1990s.[21]

As is evident from the language of this provision, it created a two-step analysis to establish a single payor of the liability on a claim: first, determine the "last employer" during the period of the claimant's exposure to the hazardous conditions; second, once the last employer has been identified, determine the last insurer "if any" on the risk during the claimant's exposure with the last employer. The end result was that there would be only one payor of liability for a typical occupational disease claim – either the "last employer" if self-insured or the "last insurer" of that employer if not self-insured. The last injurious exposure rule thus came into play as to insurers only after a determination that the last employer was not self-insured.

*1951 – Occupational disease includes occupational hearing loss*

As noted above, the 1939 amendments adding occupational diseases to the Act listed specific occupational diseases, but that list did not include occupational hearing loss. In 1951, the Legislature amended the statute to delete the limitation to a specific list of

---

of the code, the introductory word "where" in §23(b) was replaced by "when," presumably because the last injurious exposure rule relates to chronology rather than location.

[21] In 1980, as part of a bill making substantive changes in other provisions of the law, the word "such" in §23(b) was replaced in the four instances in which it appeared in that provision with the word "the." Chapter 706, Laws of Maryland 1980. This appears to have been a minor stylistic change, as the same substitution was made throughout the bill in many instances in which the word "such" appeared. Presumably, this was because modern standards for legislative drafting discourage the use of "such" as a demonstrative adjective. *See* Maryland Style Manual for Statutory Law (2008) at 80; *see also* Bryan A. Garner, The Redbook: A Manual on Legal Style (3d ed. 2013) at 223 (recommending the substitution of "the," "this," or "that" in place of "such" as an adjective).

covered ailments. The Act was thus extended to all diseases, thereby including occupational hearing loss. Chapter 287, Laws of Maryland 1951; *see Yox*, 380 Md. at 332.

*1961 – Case law limits liability for occupational hearing loss*

Subsequent to the 1951 amendment, the Court of Appeals of Maryland, now known as the Supreme Court of Maryland, held that occupational hearing loss was compensable as an occupational disease only if the claimant was incapacitated by the disease and unable to perform the regular work for which the claimant was employed. *Belschner v. Anchor Post*, 227 Md. 89, 93 (1961). That holding was based on the definition of "disablement" in the Act's provisions concerning occupational diseases. 227 Md. at 93. The Court invited the General Assembly to overturn that holding and liberalize the law with respect to occupational hearing loss, if it wished to do so. *Id.* at 95.

*1967 – Special provisions concerning occupational hearing loss added to Act*

A few years later, the General Assembly did liberalize the law. In 1967, at the recommendation of a gubernatorial commission, the General Assembly enacted special provisions relating to occupational hearing loss. Chapter 155, Laws of Maryland 1967; *see* Seventh Report of the Governor's Commission to Study Maryland Workmen's Compensation Laws at p. 2, recommendation 4 (February 14, 1967). A key purpose of that legislation was to overturn the holding in *Belschner* and to allow a worker to obtain benefits for occupational hearing loss, even if the worker could still perform the worker's job. *See Yox*, 380 Md. at 333-35; *Crawley v. General Motors Corp*., 70 Md. App. 100, 102-08, *cert. denied*, 310 Md. 147 (1987). The legislation included specific criteria for measuring hearing loss and a specification as to when such hearing loss was compensable. *See*

20

Maryland Code (1957), Article 101, §25A(a)-(f), (i)-(j), *now codified in* LE §§ 9-505, 9-650.

Pertinent to this appeal, the 1967 legislation also added other provisions specific to occupational hearing loss, including the substantive and procedural provisions for the allocation of liability when the claimant was exposed to harmful industrial noise while employed by more than one employer. *See* Maryland Code (1957), Article 101, §25A(h), *now codified in* LE §§9-651, 9-652. As the title to the 1967 bill indicated, the purpose of the amendments was, among other things, "to provide workmen's compensation benefits for occupational deafness due to industrial noise" and "to allocate liability for such occupational deafness among employers."

The liability allocation provisions were apparently based on the fact that occupational hearing loss presents a situation where causation may be more readily determined than is the case with other occupational diseases. *See* Annotation, *Workers' compensation: liability of successive employers for disease or condition allegedly attributable to successive employments*, 34 ALR4th 958 (1984 & Cum. Supp.), §2(a) ("[T]he main theoretical basis for [the last injurious exposure rule] – that the precise degree of contribution by each employer to the final disability must be conjectural – is defeated by the rare circumstance where the precise degree of such contribution by each employer may indeed be measured, such as where a series of hearing tests has been administered to one suffering hearing loss in a series of employments …"); *see also* Clifford B. Sobin, 1 Maryland Workers' Compensation §9.1 (Oct. 2022 update), n.11 (noting that, in many

instances where there is exposure to harmful noise in a workplace, the employer will require that employees take periodic hearing tests).

The 1967 legislation replaced the bright-line last injurious exposure rule as to employers with a regime that incorporates an opportunity to allocate liability based on evidence and, in the absence of such evidence, a different bright-line default rule (equal shares) for the allocation of liability. As a threshold requirement, the claimant must have been exposed to harmful noise while employed with an employer for at least 90 days for the employer to be liable. Maryland Code (1957), Article 101, §25A(j). If so, that employer could be held liable for the entire claim, but could limit its liability if it was able to show "by competent evidence" that the employee's hearing was already impaired at outset of exposure during that employment. *Id., §25A(h).* Even if that employer was liable for the full extent of hearing loss, it could implead other employers in whose employment the claimant was exposed to harmful noise and essentially obtain contribution. *Id.* Liability was to be shared equally unless the "evidence warrants a different apportionment." *Id.*

Thus, in contrast to the provisions governing other occupational diseases, the 1967 amendments concerning occupational hearing loss established: (1) a threshold period of claimant exposure for an employer to be liable; (2) full liability for any employer for whom that threshold is met – not just the last employer; (3) if a liable employer can prove that the claimant's hearing was already impaired before employment, partial liability; (4) the availability to a liable employer of contribution from other liable employers; and (5)

22

allocation of liability among multiple liable employers in equal shares or differently, if evidence supports a different apportionment.

This was a very different approach from the bright-line last injurious exposure rule, which places responsibility for the entire liability on a specific employer and in turn a specific insurer of that employer, does not provide for apportionment in any manner, and does not contemplate any determination of relative causation.

*1991 – Recodification in the new Labor & Employment Article*

In 1991, as part of the code revision bill that created the Labor & Employment Article, the last injurious exposure rule was codified in its current language as LE §9-502(b). Chapter 8, §2, Laws of Maryland 1991, at pp. 846-47. In its new codification, the last injurious exposure rule was tabulated for the first time, a tabulation that consisted of two paragraphs – the first relating to employers (LE §9-502(b)(1)) and the second relating to insurers (LE §9-502(b)(2)). *Id.* at 847. However, as indicated in the Revisor's Note, this revision was not intended to effect a substantive change in the statute. *Id.*, Revisor's Note at p. 848.

The special provisions concerning occupational hearing loss that had appeared in a single section of the law – most recently, §25A of Article 101 – were also recodified, without substantive change, but were now split between Subtitle 5 and Subtitle 6 of Title 9 of the new Labor & Employment Article. *Id.* at pp. 897-99; *see Yox*, 380 Md. at 335. Provisions defining the circumstances under which hearing loss would be compensable now appeared in LE §9-505 and §9-650. Provisions concerning the allocation of liability

23

in hearing loss cases involving multiple employers were recodified as LE §§9-651 and 9-652.

*Analysis*

The legislative history does not support the two premises of PMA's textual argument. The first prong of PMA's argument is that the absence of the word "insurer" in the special provisions concerning the allocation of liability in occupational hearing loss cases means that those provisions did not displace the last injurious exposure rule generally applicable to occupational disease claims. However, the Legislature decided in 1967 to enact a new rule, applicable only to hearing loss claims, as a substitute for the bright-line rule applicable to other occupational disease claims. In place of that bright-line rule, the 1967 amendments substituted an opportunity for an apportionment of liability and a different bright-line default rule (equal shares) for the bright-line rule applicable to other occupational diseases. Nothing in the legislative history of the 1967 amendments indicates that the use of the word "employer" in those provisions signaled a separate method for allocating liability among an employer's insurers in those cases.

The second premise of PMA's argument is its assumption that the tabulation of the current codification of the last injurious exposure rule in two paragraphs of LE §9-502(b) means that they function independently of each other, such that the last injurious exposure rule may apply to insurers even when it does not apply to employers. That assumption is contradicted by the legislative history.

From the inception of the last injurious exposure rule in 1939 to its most recent recodification 52 years later, it has been evident that the employer and insurer parts of the

24

rule were to function sequentially, not independently, to identify a single payor of liability. In PMA's interpretation of the statute, the 1991 code revision that created the tabulation effected a substantive change in the rule such that insurers would be governed by it even when employers were not. But there is no indication in the legislative history that the tabulation created by the 1991 recodification of the rule was intended to change the operation of the rule. To the contrary, as explained above, the Revisor's Note to LE §9-502(b) in the 1991 recodification explicitly states that it was *not* intended to effect a substantive change in the rule.

The sequential operation of the last injurious exposure rule makes sense in the context of the workers' compensation law. An insurer is not independently liable to a claimant without a contractual relationship with an employer of the claimant. Thus, as it applies in the case of a typical occupational disease, the last injurious exposure rule necessarily first requires identification of the liable employer – *i.e.*, the last employer chronologically. Only then does the rule's provision concerning insurers come into play. Only the last insurer, chronologically, that has contracted to cover the liability of that last employer is implicated by the rule. An insurer of a prior employer – whether first, last, or somewhere in between – is not implicated at all by the rule. Thus, under the last injurious exposure rule, in most occupational disease cases, liability to the claimant is initially assigned to only one employer and, if that employer is not self-insured, ultimately to only one insurer. Only one entity is liable, regardless of the number of potentially liable

25

employers and insurers. However, that is not the case for an occupational hearing loss claim – even under PMA's view of the statute.[22]

In essence, PMA argues that LE §9-502(b)(2) relating to insurers in the last injurious exposure rule should be applied out of context of the rest of that rule and the Act. The legislative history and purpose of the Act do not support that argument.

### 3.     Consequences of Alternative Interpretations

PMA argues that an interpretation of the Act that does not apply the last injurious exposure rule to insurers in occupational hearing loss cases will lead to absurd results. PMA posits an example of a case involving a single employer with three different insurers over the period of the claimant's employment. Arguing that it is unclear how liability would be allocated among those insurers, PMA asserts that the problem would be compounded in a situation where there are multiple employers, each with multiple insurers, with the result that there would be onerous litigation over how to allocate liability among those insurers.[23]

As indicated earlier, however, the allocation challenges that other occupational diseases pose – notably, the difficulty of identifying the degree to which each set of injurious exposures over a period of years caused the disease – are not necessarily present

---

[22] In PMA's view, only one insurer may be held liable for a claim of occupational hearing loss against an employer. But PMA does not dispute that more than one employer may be liable on such a claim with separate insurers covering the liability of each of those employers.

[23] At the same time, PMA concedes that dispensing with the last injurious exposure rule in a case like this one promotes the availability of insurance for a particular claim.

26

in occupational hearing loss cases. In hearing loss cases, the availability of audiological testing may allow for a determination of the extent to which a claimant's hearing has deteriorated at different points in time. Apparently for that reason, the Legislature did not deem it absurd to supersede the last injurious exposure rule and provide for the allocation of liability (when the proof allows) and for the sharing of liability by an alternative bright-line rule (equal shares) when it does not.

A conclusion that not every general rule in LE §9-502 concerning occupational diseases applies to an occupational hearing loss claim is also not absurd in light of the interpretation of that statute by the State's highest court. Although there is no case law on the precise issue presented by this case,[24] the Court of Appeals addressed an analogous issue in *Yox v. Tru-Rol Co.*, 380 Md. 326 (2004).

In *Yox*, the Court faced the question of when the statute of limitations began to run for an occupational hearing loss claim. Under LE §9-711(b), the general deadline for filing a claim based on an occupational disease is two years from the date of "disablement" or the date when the employee first had actual knowledge that the disablement was caused by the employment. In turn, LE §9-502, setting out the general provisions governing

_____

[24] The last injurious exposure rule has been adopted in the workers' compensation laws of many other jurisdictions – sometimes, as in Maryland, by statute and sometimes by case law. *E.g.*, *Travelers Insurance Co. v. Cardillo*, 225 F.2d 137, 145 (2d Cir.), *cert. denied*, 350 U.S. 913 (1955) (adopting last injurious exposure rule for purposes of federal Longshore & Harbor Workers' Compensation Act); *see also* 14 Larson's Workers' Compensation Law §153.01 *et seq.* (2023). However, there is no model act that is the source of the various statutory provisions; case law in other jurisdictions, which necessarily relates to the specific provisions of the local law, would offer limited guidance in construing the Maryland version. Perhaps for that reason, none of the parties has cited case law from other jurisdictions.

27

occupational diseases, defines "disablement" to mean that the employee has become "incapacitated," as a result of the disease, from performing work in the last occupation involving the injurious exposure that resulted in the disease. LE §9-502(a). The issue in *Yox* was whether the definition of "disablement" in subsection (a) of LE §9-502 applied to occupational hearing loss claims.

In deciding that issue, the Court noted that applying the general definition of "disablement" to occupational hearing loss claims would lead to the same result as in *Belschner* – that is, any hearing loss claim for which the claimant could not show incapacitation would be denied. However, as noted above, the 1967 amendments that created the special occupational hearing loss provisions were intended to take up the *Belschner* Court's invitation to overturn its holding by liberalizing the statute. In *Yox*, the Court recognized that purpose and held that, although the specific provisions regarding occupational hearing loss that had been enacted in reaction to *Belschner* did not contain a separate definition of "disablement," the general definition of "disablement" in LE §9-502(a) "does not and cannot apply, because it is wholly inconsistent with the substance and avowed purpose" of the addition of the occupational hearing loss provisions in 1967. *Yox*, 380 Md. at 336-37. The Court looked to the specific criteria for compensation in LE §9-505 and LE §9-650 of the occupational hearing loss provisions for an implicit definition of "disablement" that would trigger the beginning of the period of limitations in such cases. *Id.* at 337-38.

Thus, despite an argument that the "plain meaning" of the Act required that the definition of "disablement" generally applicable to occupational disease claims must also

28

apply to claims of occupational hearing loss,[25] the Court held that the special provisions concerning occupational hearing loss enacted in 1967 required that a different understanding of the term be applied. In particular, while the general definition of disablement required that the claimant be incapacitated from performing the claimant's job, the legislative history of the 1967 amendments made clear that the primary purpose of that law was to overturn a case that held just that.

In the instant case, it is even clearer than in *Yox* that the General Assembly has superseded a general provision of LE §9-502 – this time, subsection (b) – in the specific provisions concerning occupational hearing loss. The consequence that PMA posits as absurd is thus precisely the consequence that the General Assembly intended.

4.      Summary

When the specific provisions relating to occupational hearing loss were added to the Act in 1967, they did not include a last injurious exposure rule. Indeed, the statutory sections providing for the impleading of multiple employers and the allocation of liability directly contradicted that rule. The arbitrary bright-line rule of the last injurious exposure rule was superseded by a different bright-line allocation rule (equal shares) that was subject to modification if there was evidence that supported modification of an equal-share allocation. In the context of the entire Act, the fact that the occupational hearing loss provisions express liability on a claim by reference to employers and do not specifically mention insurers does not exempt insurers from those provisions.

---

[25] The dissent in *Yox* advanced such an argument. 380 Md. at 338-41.

29

The legislative history of the last injurious exposure rule in Maryland indicates that it operates sequentially – first applied to employers to identify the liable employer and then, if that employer is not self-insured, to its insurer(s) to identify the one insurer to be responsible for paying the claim. This is antithetical to the regime created by the occupational hearing loss provisions, both substantively (apportionment) and procedurally (impleader). Further, there is no indication in the available legislative history that the General Assembly believed that a claim for occupational hearing loss would be subject to the last injurious exposure rule. Finally, as the State's highest court held in *Yox*, a general provision governing occupational diseases in LE §9-502 must give way when inconsistent with the approach that the General Assembly has specified for claims of occupational hearing loss.

### III

### Conclusion

For the reasons set forth above, we agree with the Commission and the Circuit Court that the last injurious exposure rule does not apply in allocating liability among insurers of liable employers for claims of occupational hearing loss under the Act. Accordingly, PMA may not invoke that rule to deny its appropriate share of liability for Mr. Cree's claim.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

30